UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
JOSEPH WADE,
                Plaintiff,

   -against-

ELSEVIER, INC.

                Defendant.
-------------------------------------------------------

CHEN, J.

GOLD, M.J.

Index #:

COMPLAINT

Plaintiff demands a Jury Trial

CV 15-1579

This action is brought by Plaintiff, Joseph Wade ("Plaintiff"), by his attorney Anthony Mayol, P.C., against his former employer Elsevier, Inc. ("Defendant"), alleges as precedes and follows. In accordance with Rule38(b) of the Federal Rules of Civil Procedure, Joseph Wade hereby demands a jury trial of this action.

I. NATURE OF THE ACTION

    1. Plaintiff brings this action to recover compensatory and punitive damages because Defendant discriminated against him on the basis of his race in the terms, conditions and privileges of his employment. Defendant has hereby violated Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin). New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. seq., the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296 et. seq., and the New York State Labor Law ("NYSLL"), N.Y. Labor Law § 201-d.

    2. Plaintiff brings this action under the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. seq., the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296 et. seq., Title VII of the Civil Rights Act ("Title VII"), 42 USC § 2000e et. seq., and the New York State Labor Law ("NYSLL"), N.Y. Labor Law § 201-d, to secure relief against Defendant for harassing and firing Plaintiff in retaliation for his engaging in protected activity under federal, state and city law as set forth herein.

## II. JURISDICTION AND VENUE

3. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e et. seq., and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

5. Plaintiff, Joseph Wade, a forty seven (47) year old African American male resides at 1433 Stephen Marc Lane, East Meadow Nassau County, New York State, 11554.

6. Defendant maintains a corporate office at 360 Park Avenue South New York, New York State, 10010.

7. The address where Plaintiff sought employment and was employed by the Defendant was 360 Park Avenue, New York, New York State, 10010.

## III. FACTUAL ALLEGATIONS

8. On or about March 18, 2013, Plaintiff began his employment with Elsevier as an Account Acquisition Manager.

9. Plaintiff was part of a newly formed team whose directive was to acquire new business in the Corporate Science Research and Development industry. Plaintiff was the third person hired for this team. Three more people were hired shortly after. Plaintiff was the only member hired, who is of African American descent.

10. This new team's objective was very ambitious based on the fact that they had never split up their sales team to have just the responsibility of acquiring new accounts go to one group without any existing accounts to renew.

11. Defendant promised a marketing initiative that would give this new team sales leads and training on their products to complete sales.

12. The leads generated by Defendant were sparse and not sufficient to meet the growing demands of Defendant.

13. There was team wide poor performance.

14. Defendant underestimated the lack of demand for access to their information and set expectations of Plaintiff that were unreasonable.

15. The entire Sales team failed to meet their quotas and appointment measurable.

16. On or about August of 2013, Plaintiff's manager, John Ruggiero spoke to Plaintiff and gave him a verbal warning for his performance.

17. Upon information and belief, Ruggiero did not issue a verbal warning (or any other warning) to any of the other members of the sales team, all of whom failed to meet company quotas/metrics and none of whom were African American.

18. Plaintiff reminded his manager that this was a new venture and he was not given what was promised upon hiring and as such, that a verbal warning was premature.

19. Plaintiff's manager informed him that he had no choice and inferred that his Director, John Zeigler was the driving force in the warning.

20. During the hiring process, Plaintiff's Director, Ziegler, told Plaintiff that the typical sales cycle for the products was six months. Plaintiff was given a verbal warning before six months of engagement with customers could occur. No other

member of the sales team was given such a warning before the expiration of the 6 month period.

21. Being the first of the new hires in 2013, Plaintiff spent the first 60 days being inadequately trained and not given all the necessary tools to complete sales.

22. Plaintiff was requested to meet with the Human Resources person, Chandani Gurung. Ms. Gurung told Plaintiff she was going to meet with everyone on the new team to discuss their transition.

23. Due to sales meetings and schedule conflicts this meeting did not happen for a few weeks.

24. Upon information and belief, and according to the member of the sales team, Ms. Gurung had not reached out to them at all, nor had they been reprimanded.

25. On or about September 19, 2013, Plaintiff and Ms. Gurung finally met. Plaintiff expressed that he thought it was premature to give him a verbal warning. He also expressed that no other members of the team had received a warning and no one had made a sale yet.

26. Ms. Gurung made it very clear that she worked for Elsevier and was not neutral or interested in helping Plaintiff with his situation.

27. After issuance of the verbal warning, Plaintiff was forced by Defendant to change his agreed upon working conditions.

28. No other member of the sales team was forced to change his agreed upon working conditions.

29. Every member of the team worked from home and traveled across their designated region for appointments. Because of the undeserving and discriminatory verbal warning, Plaintiff now had to commute into the New York City office every day when he was not traveling. Plaintiff's territory covered up to 14 states and parts of Canada. Plaintiff was also forced to do additional administrative duties, all of which took him away from sales (the position and duties he was hired to perform and was being evaluated on).

30. None of Plaintiff's peers had to perform such additional administrative duties, despite the fact that their production level was similar, if not worse, than Plaintiff's production.

31. These mandates slowed down Plaintiff's production and isolated him from his peers.

32. On or about October of 2013, Plaintiff made the first sale for the newly hired members of the new team. Plaintiff was praised in the Company Newsletter for his accomplishment. No other member hired with Plaintiff made a sale until the end of December.

33. The sales team collectively finished the year grossly below their expected numbers. One team member- a Caucasian did not make a single sale. Another Caucasian member of the team was awarded by Ruggiero sales that another member who later quit had generated. Plaintiff was not awarded any such sales.

34. Despite the team's collective lack of production, only Plaintiff was singled out and treated differently for the team's lack of immediate success.

35. Though no member made their numbers or performed up to expectations, the year ended with Plaintiff being the only member on verbal warning and with strenuous demands on his activity.

36. On or about January 2014, the Director, Zeigler, who by that time had been demoted, was named new Manager of the Acquisition team. This was a demotion from being in charge of the entire North America sales team.

37. John Zeigler immediately treated Plaintiff in a discriminatorily hostile manner, including but not limited to changing his assignment multiple times and trying to create conflict by lying about other managers' comments towards Plaintiff's attitude and dedication. No other similarly situated sales representatives experienced such treatment.

38. On or about February 2014, Defendant proclaimed that the new team would get the support and leads that were not given the previous year and that changes would be made to assist them in making their new required sales targets.

39. Defendant immediately singled Plaintiff out and put Plaintiff on written warning and set parameters for keeping employment at a rate that had not been previously met by any of the team members. No other member of the team had been placed on written warning.

40. Plaintiff again met with Ms. Gurung and again expressed his frustration that he was being singled out and discriminated against because no one else, even those who had performed worse were ever giving a warning. Ms. Gurung claimed she would investigate the matter.

41. Only after this conversation between Plaintiff and Ms. Gurung, wherein Plaintiff repeated his complaint of disparate treatment, did the remaining member of the team (Caucasian) who had not made a sale since being employed received a verbal warning.

42. This Caucasian employee received the verbal warning only after Plaintiff made complaints of discrimination, despite this employee's prior poor performance. This was only done to give the appearance of equal treatment, when in reality it

was Plaintiff, the only African American member of the team, that bore the full brunt for the team's shortcomings.

43. Plaintiff worked hard and diligently to meet the unrealistic immediate requirements to keep his job. He was initially successful in meeting the measurable.

44. Despite the fact that Plaintiff met these performance metrics, Defendant then decided to keep Plaintiff on warning and make the requirements even harder by shortening the traditional timeframe. Defendant demanded that Plaintiff hit a moving target. No other member of the sales team had such unattainable metrics placed on them.

45. Ms. Gurung informed Plaintiff that she supposedly investigated Plaintiff's claim of discrimination and discriminatorily hostile behavior and concluded that there was no valid claim – although she never produced a report or identified the scope and extent of her so-called investigation. Upon information and belief, there was either no investigation or it was a sham investigation.

46. Plaintiff was subsequently dismissed from his employment. At the time of Plaintiff's dismissal, he had just made a sale which made him the second highest selling member of the team year to date. Upon information and belief, with his discriminatory termination, there were no other sales representatives in his former team that were African American.

47. Plaintiff filed a charge of discrimination on July 25, 2014 with the Equal Employment Opportunity Commission regarding Defendant's discriminatory conduct.

48. The Equal Employment Opportunity Commission issued a Right To Sue Letter, which Plaintiff received on December 27, 2014.

## FIRST CAUSE OF ACTION

## VIOLATION OF TITLE VII of the CIVIL RIGHTS ACT

49. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

50. The aforesaid actions of the Defendant constitutes a violation of Title VII of the Civil Rights Act ("Title VII"), 42 USC 2000e et. seq. by terminating Plaintiff on the basis of his race.

51. As a result of the Defendant's willful violation of the Civil Rights Act, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

## SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF TITLE VII of the

## CIVIL RIGHTS ACT

52. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

53. The aforesaid actions of the Defendant constitutes a violation of Title VII of the Civil Rights Act ("Title VII"), 42 USC 2000e et. seq. by retaliating against Plaintiff's claim of racial discrimination by terminating him.

54. As a result of the Defendant's willful violation of the Civil Rights Act, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW
## NEW YORK EXECUTIVE LAW 296 ET SEQ

55. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

56. Defendant subjected Plaintiff to discrimination on the basis of his age, religion and national origin, as alleged herein, including failing to accommodate, and demoting and transferring him because of, his age national origin and religious practices.

57. Defendant's conduct in violation of New York Executive Law 296 *et seq.* has injured and damaged Plaintiff.

58. By reason of Defendant's conduct as alleged herein, Plaintiff is entitled to all legal remedies available for violations of New York Executive Law 296 *et seq.*

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
## NEW YORK EXECUTIVE LAW 296 ET SEQ

59. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-58 inclusive as if they were fully set forth herein.

60. The aforesaid actions of the defendant constitute a violation of the New York City Human Rights Law, New York City Administrative Code § 8-101 et. seq. by terminating plaintiff on the basis of her participation in a civil rights proceeding and/or her opposition to unlawful discrimination.

61. As a result of defendant's violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because defendant's actions were intentional, malicious, and without justification or excuse, punitive damages.

WHEREFORE, Plaintiff Joseph Wade requests judgment against Defendant Elsevier, Inc., as follows: i.) Defendant to pay monetary damages in an amount to be determined at trial including compensatory damages, back pay, front pay, interest, emotional distress/pain & suffering damages, liquidated damages, punitive damages, and civil penalties & costs, including attorney's fees: ii) an award of such other and further relief as the Court deems just and proper.

Dated: March 25, 2015

Anthony Mayol, P.C.
*Counsel for Plaintiff*

By: _____

Anthony Mayol
116-55 Queens Blvd. Suite 201
Forest Hills, N.Y. 11375
(718) 909-8538

EEOC Form 161-B (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Joseph Wade<br>1433 Stephen Marc Lane<br>East Meadow, NY 11554 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2014-03000 | Rudolph White, Investigator | (212) 336-3753 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

12/24/2014 (Date Mailed)

Enclosures(s)

cc: Chandani Gurung
Owner
ELSEVIER
360 Park Avenue South
New York, NY 10010